Good morning, Your Honor. May it please the Court, my name is Suzanne Lee Elliott. I'm here on behalf of Mr. Joshua Kennedy. I would like to reserve three minutes for rebuttal from my opening statements today. Mr. Kennedy was convicted of possession and transportation of child pornography in the Western District of Washington. We've raised a number of issues in our briefing, but I would like to start with the discussion of the restitution order entered in this case, as that is an issue of first impression with this Court. The principal dispute is whether or not, what level of causation must be shown between the defendant's conduct in this kind of case and the victim's claimed damages as a matter of restitution. Now in this case, did they seek restitution from the father? It appears to me, Judge Fletcher, that the victims in this case are the same victims in many of the cases that have been cited to this Court. And from what I can gather from the testimony in this case from the investigating officers in all of the published cases is that the persons who inflicted the sexual abuse and took the pictures of these young women were imprisoned, and I presume had restitution orders entered against them in the original proceedings. Well, one of the investigations took place, it appears to me, in Southwest Washington, but the others are from other areas of the country. But if you look at the factual basis of all of the cases that we have cited here, the victims who use the pseudonym Amy and Vicky or Misty have pursued the same kinds of restitution requests in many, many cases. And in fact, Amy has asked for the $3 million figure in innumerable cases around the country. So I believe there were original restitution. It would seem unlikely that there wouldn't have been, but in what amounts, I don't know, and whether any have been collected from the original abusers. You know, one concern that's expressed by opposing counsel, the government, is that if we can't, if a court can't impose restitution orders on persons who are downloading, which the Congress has determined is another crime, if they can't impose restitution because you can't chart, you can't draw the line between the downloading and the individual, then that language in the statute doesn't really have any meaning. And Congress intended to impose restitution orders on these sorts of defendants. What's your response to that argument? My response is that in the McDaniels case, which was recently cited as supplemental authority, I think the government in that case responding to the weight of authority on the other side for most other jurisdictions, which is you have to have proximate cause. And the Cloud case says that means you have to show both that the victim had some knowledge of the revictimization, and the treating doctor has to sort of quantify and say, yes, she's going to need an additional one, two, three sessions on this basis. In McDaniel, they called Dr. Green to testify, and he testified precisely to that. In this case, in the supplemental excerpts of record, which are sealed, the government provided the restitution requests that were made by these victims in this case. They have the caption of this case, and they are dated in 2009, but they appear to be similar, if not identical, to the restitution requests made in the other cases cited by us in our pleadings. And in fact, the psychological evaluations in there predate Mr. Kennedy's conviction. So, for example, when it comes to Vicki, Dr. Green's report was dated May 22, 2009, and Mr. Kennedy was not convicted until August 27, 2009. Now, he was arrested before that, and it's unclear when the victims get notice, although the Department of Justice, or an agency of the federal government, is required by statute to give them notice when persons are arrested for possession of these images. And then the psychological evidence for Amy was dated November 21, 2008, just days after Mr. Kennedy was arrested, but well before his conviction in this matter. So, are you saying that in order to give meaning to the statutory language, in order for there to be restitution, a doctor, or there would have to be evidence that the particular conduct of the defendant in that case caused specific losses to the victim? Is that your position? That's our position because that is what the statute says, and in United States v. Laney, this court construed the statute. Now, it wasn't in exactly the same context as these cases, and in fact, as I know the court is well aware, we have cited a legion of cases from around the country because this is a developing issue. But what this court said was a victim is an individual harmed as a result of the commission of a crime. That's the plain language of the statute. The plain language of the statute says restitution should compensate for the full amount of the victim's losses, and then defines losses as those losses suffered by the victim as approximate cause of the offense. And it's that proximate cause language that the other courts, in particular, Cloud and the main case, I believe, Burks, have said are problematic here when you have a generalized request under the statutory framework. McDaniels distinguished that by saying Dr. Greenman came in and testified as to the particular additional injuries caused by this new knowledge to the victim of the downloading. I would point out that, you know, at least one of the district courts have said there's a better solution here to implement Congress's intent and to make a special restitution statute in these kinds of cases because proximate cause is a difficult issue. And of course, Mr. Kennedy is not arguing that there wasn't substantial harm to these victims. But the subsequent problem then is how was the amount set in this case? And so absent that connective testimony, that nexus testimony, the judge simply picked the figure of $1,000 a depiction. And as, again, some of the other courts have noted, the district courts have had a range of responses. Some have imposed a full $3 million. Some have attempted to quantify it. Others have imposed a nominal amount. Where did the judge get the notion of $1,000 per depiction? Was that the government's suggestion? Well, if you read the restitution hearing, the first — I'd just like to point out, the government argued proximate cause wasn't a requirement under the statute. So I think that was where the judge first — and that's at page 19 — no, at page 66 of our excerpt of record. They say it's not really proximate cause. So I think that skewed the judge's view of the statutory language. And the government did ask for $3 million, but then because of the restitution briefing filed on the part of the defendant in this matter, there was some discussion about nominal amounts and that kind of thing. And I think the judge just picked an amount. He did not impose — Nobody tried to base it on — No, and in fact, you know, some of the cases talk about — and I think this is probably part of plea negotiations and that kind of thing, but the Northern District of California has a baseline amount of X number per depiction. Well, they could have — in the plea negotiations, they could have negotiated agreement that as part of your plea, you will agree to pay — That is correct. This was a trial case. $5,000 in restitution to the victim. That is correct. But this was a case that went to trial, so there was no — none of that kind of negotiation that went on. So we would ask that the court follow those well-reasoned cases from other jurisdictions and the great weight of authority and find that proximate cause is required, that the trial judge in this case did not use the correct standard in terms of imposing the restitution, and in fact, proximate cause was not demonstrated. We have raised several other issues. I would like to talk briefly about the trial issue which we have raised, which is how the government chose to prove the age of the children in the photographs. And in our briefing, we have argued that because the defendant in this case was happy to stipulate that the depictions were of children and of the children and that the children were underage, that the trial judge should have excluded the government's proposed witnesses who were the investigating officers of the original offenses that led to the taking of the pictures and to the sexual abuse of the children. The language I thought I remembered was that your client agreed not to argue that the children were not — or that the victims were not minors or were not real, as opposed to stipulating that they were. Did I misunderstand that? Well, there was a pretrial argument and then a stipulation, and what the judge — the judge characterized it as the mere fact the defendant is willing to stipulate to certain documents or certain categories of this evidence is not controlling. So I believe the trial judge understood them to be willing to stipulate that they were real children in the photographs, and there's some suggestion that they weren't going to argue that they weren't the children depicted in the photos. That's different, though, than stipulating. Your Honor, I stipulate and agree children were minors or whatever. That is true, although there was — Everyone has to prove that. And they had a doctor from — in addition to the prejudicial evidence that was admitted about incest and the — how these — that these children were then listed in the missing children's database, they had a doctor from Mary Bridge Hospital in Tacoma who stipulated that she viewed the images and they were of children and they were real children and they did not meet certain stages of development which established that they were children. So in this court in sign, and the United States Supreme Court said in Old Chief, that you get to compare evidentiary alternatives as the trial judge, and that's one means by which the judge can eliminate the prejudice from other — to permit the judge to prevent the government from picking the most prejudicial means of proof. When I read the testimony of the witnesses, it was very constrained. And it's hard for me to see why having the government investigators say, I saw the birth certificate and confirmed their age and met the individual and she's real, why the government couldn't use that as opposed to, well, I can infer from the photos that it's a minor. I mean, it seems — and it didn't seem like there was anything particularly inflammatory about the government investigator testimony. So help me understand what the concern is there. Our concern is the statement in one case that it was the result of incest and that it was her father, which is a substantial social taboo and I think particularly — would have been particularly distressing to the jury. There's also the statement that they had pursued numerous prosecutions throughout the country, which could not have been, of course, attributed to Mr. Kennedy. And then the statement that he had — that one of the officers had been notified by the National Center for Exploited and Missing Children that they had images of this girl. I don't think anything, any part of that was necessary to demonstrate the elements of the offense in this case and was more prejudicial than probative on those issues. Let me ask you about the ineffective assistance of counsel issue. Yes. I don't quite understand your position. Are you asking us not to address it and leave it to a 2255? Or are you asking us to go ahead and address it? What — I don't quite understand what your position is. I must admit, Your Honor, I am between a rock and a hard place because the magistrate told me that this issue could be — Well, I'm for you what the magistrate said. Okay. I would like the district court to hold a full evidentiary hearing on my 2255. Well, I mean, if you tell us that there are factual matters that need to be developed for a full consideration of the ineffective assistance of counsel issue, then — I believe that to be true. And I believe that the magistrate misconstrued the cases from this court, and this court does not consider questions of ineffective assistance of counsel generally in a directive. There are some instances where we can and have. Yes. I don't think this is that case because there is still a question of what exactly were the images viewed by the customs inspector at the initial review of this computer at CTAC. I think that — if I'm not mistaken, I think the government also thinks that — I think they're in agreement with me. They did not file an objection to my report — to the report in — or a response to my objection to the report in recommendation, and that has not been ruled on. So I would just ask that this matter be remanded. That portion of this case be remanded. Okay. Or do we not address that portion? Not address it. Thank you. May it please the Court, my name is Helen Bruner. I'm an assistant United States attorney for the Western District of Washington here representing the United States. Let me just take the issues perhaps in reverse order. With respect to the report in recommendation, it is still only a report in recommendation. The district court has not adopted it. But in any event, in the report in recommendation, the court very clearly says that once this direct appeal is resolved, Mr. Kennedy could indeed file a 2255 where ineffective assistance counsel claims either related to trial counsel or, if he wished to pursue them, appellate counsel with due respect to appellate counsel. Those questions would be open. This is a report in recommendation recommending dismissal without prejudice on that issue. So we would suggest — we would strongly urge this court not to address this question, leave it to the 2255. With respect to the trial testimony, and let me be brief with respect to that as well, there was no agreement to stipulate what is in the record is at the government's supplemental excerpt of record at 16, which shows that what counsel had offered was basically to say that the testimony would not be contested by the defense. I do think there is a big difference between something being not contested and the government having a stipulation that meets an offer of proof. But in any event, this case is not the case arising out of Old Chief where the issue was the defendant's status as a convicted felon, which in and of itself the evidence of a prior conviction, unless it's admissible for reasons under 404B, would be propensity evidence, and that was the basis for Old Chief. Old Chief did not eliminate the longstanding rule that the government — the defendant cannot prevent the government from proving the full weight of its case simply by offering to stipulate. So I don't think that that issue — and in any event, I think as Judge Ikuda observed, I think the testimony here was very, very constrained to the extent that there was discussion about who the father was. In two cases, the officers mentioned that the abuser was the father. Could you move the mics down just a little? If you would feel better, you could lower the podium, too. Oh, I'm all right, Your Honor. Thank you very much. Having said that, I really — I think that the evidence here was appropriate. It certainly went to elements of the offense that the government had to prove, that is to say the fact that these children were minors, that they were real children, and in fact that the images had been mail-chipped or transported in interstate commerce. So the testimony also went to where the images had been created. This then leads us to the restitution issue. And I would like to start by observing that in 1982 in New York v. Ferber, the Supreme Court observed that photographs or images taken during the sexual abuse of a child create a permanent record of that abuse and that the harm is exacerbated by the circulation of those images. The court observed that the fact that the child must go through life knowing that the images of their abuse are being circulated, that the child must endure fear knowing that others might learn about abuse, and that this kind of knowledge increases the emotional and psychic harm suffered to the child. And I wanted to start there because I think on this record, the observations made by the Supreme Court some 30 years ago were borne out by the evidence before the district court. We have before the district court the victim statements by Vicki and Amy, as well as psychological reports that describe their injuries in similar terms. They talk about obviously there's psychological injuries from the original extraordinary abuse that they suffered, suffered at the hands of people that they loved and trusted. But they also talk about the invasion of privacy, the further psychological images when or psychological harm rather where individuals like Mr. Kennedy who viewed those images for pleasure. Can I interrupt you for a moment and just explain what my difficulty is here? We have a case, United States v. Doe, which says we use a rule of reason that's fairly generous, but then we say that for an award of restitution, the district court must be able to estimate, based on facts in the record, the amount of the victim's loss with some reasonable certainty. How do we estimate with reasonable certainty the losses to those victims caused by Mr. Kennedy's action? Help me draw that line. Your Honor, I think that you have gone to the crux of the problem, which is not, if I might get there slowly a minute, it's not that these children are not victims. In fact, I think counsel in the restitution hearing certainly conceded that they were victims. The question is the divisibility of the harm, not the harm that they suffered. And therein lies the crux of the problem. I think the difficulty that everyone struggles with is not, for example, that there's additional counseling harm that's necessary if one looks at what is in the record submitted by the psychologist. They're talking about years of counseling and treatment that are going to be necessary and have quantified a figure for that. They've also, in Amy's case, quantified a figure for potential lost income during the period of her life. The problem that we're all faced with is what does that mean in terms of an individual defendant who possesses and views those images? And it seems to me that the answer to that is actually in the statute itself, the two statutes at issue being 18 U.S.C. 2259 and 18 U.S.C. 3664, wherein the discussion, especially in 3664H, talks about where there's more than one defendant that has contributed to the loss of the victim. The court may make the defendant liable for the full amount or may apportion. And I guess where I am headed with this is the difficulty here is you don't know whether it's one individual or many. We know it's many. It's clear from looking at all of the cases that have been filed around the country that the two victims here, Vicki and Amy, have sought restitution in a number of jurisdictions. That's clear. We're still waiting for you to answer Judge Akuta's question. You said you were going to get there. Now let's focus on that. I guess the answer, quite simply, is I don't know that there is a clean way to say this individual caused this much additional treatment to be necessary, versus another individual who had 20 photographs. In fact, I would suggest, Your Honor, that part of the problem here with that is reflected as well in the civil statute that's referenced in the unpublished decision by this court in Baxter, where the court makes reference to the fact that in 18 U.S.C. 2255, it authorizes the civil suit by victims such as Vicki and Misty, and it sets as a minimum harm, if you will, a minimum loss, $150,000. I think that's the problem. That's called statutory damages. I understand that, Your Honor. Congress said that. They didn't do that here. No, they did not. And a civil action is a little bit different than a restitution because restitution is supposed to compensate for loss, for concrete loss. In a civil action, you can get damage. We were talking about the cat a minute ago. You can get damages for emotional distress and other kinds of harm. Well, certainly, Your Honor, but I think the statute here also lists a number of harms that should be included in the restitution, and I think the difficulty that we're all grappling with here is if one cannot say, in essence, I think, having now looked at as many of the cases as I could possibly look at on this, and I think the courts that have reached the conclusion that no the fact that they can't divide the harm that they're all willing to accept has occurred between the various people who possess and use these images. And respectfully, Your Honor, I think Judge Jones got it right here. He attempted to come up with a way of apportioning the loss as – But where do you come up with $1,000 per photo? Well, Your Honor, that was actually – Did the United States Attorney's Office say, Your Honor, we think, and we look at all this stuff, we can fairly assume that $1,000 would be adequate to compensate them for their loss per photograph. I mean, what did you ground it on? The government certainly suggested it. I think it was grounded primarily on the fact that that had been used by other rather than attempting, to be perfectly honest, rather than attempting to tie it to any cost of this much treatment or any other concrete thing. But it is one way of attempting divisibility of that harm and attempting to apportion the harms that the victim has suffered. And I would respectfully suggest – He did it on a per photograph basis, is that correct? He did. Because – and apportioned that, obviously, per photograph for each victim. So the one victim received $17,000 and the other $48,000. It's sort of hard fitting that into the words of the statute because if it's supposed to be tied to actual loss, obviously at some point there's a limit. You've satisfied all the losses that the victim has suffered, whether over the lifetime or whatever. But to say, well, we'll impose $1,000 per photo doesn't seem to relate to the restitutionary proximate cause, make up for losses concept. And it does sound more like statutory damages. I'm sort of struggling with how do you fit that into the words of the statute. I'm not sure you've really suggested something. Well, Your Honor, what I'm suggesting here is that in Section 2259, it talks about the order of restitution shall direct the defendant to pay to the victim – and I've skipped some of the language – the full amount of the victim's losses as determined in Paragraph 2, and then directs the court to consideration of Section 3664, and then in turn 3664 permits a court where there's more than one defendant who's contributed to the loss of the victim, the court may make each defendant liable for payment of the full amount or a portion liability. And it's certainly clear that Judge Jones, in his order, made his order of restitution joint in several. My concern is that the definition of the full amount of the victim's losses is the losses suffered by the victim as a proximate result of the offense. I mean, it's not just losses in the air that you can apportion. There has to be a line. Well, I do recognize that, Your Honor, and I suppose if there were only one person to whom these images had been transmitted, we would be in a slightly different situation. The problem is that the harm to these victims and all of the psychological damage that they suffer as a result is because there are a number of individuals out there whom they cannot identify. And so you have, I think, probably an ability to quantify what additional harm there is over and above the abuse itself, what was suffered and what could be attributed to the actual act of abuse. But the visibility from there is what becomes difficult, and I guess I'm suggesting that what Judge Jones did was attempted to apportion from there. Ms. Bruder, could I just ask you one last question? Certainly, Your Honor. There was one other argument advanced by the defendant, and that had to do with the length of supervised release, which I believe Judge Jones imposed a 15-year. He did. There was some complaint about that, but as part of that argument, the defendant pointed to some terms and conditions of the supervised release. One was the testing, plasmography testing. Oh, yes, Your Honor. That's what she complained about that appears to be required throughout the life of the 15-year period of supervised release. And the government came back in the red brief and said, no, no, no, that's not quite correct. If you look at what Judge Jones actually said at the sentencing hearing, it was only if the therapist determined that testing was necessary would he have to subject himself to that kind of testing. But then when I looked at the probation, when I looked at the special conditions of supervision as contained in the judgment, I just want to make sure that that statement, the judge's intent, is actually reflected in the paragraph. Because that's the way the government explained it away. I believe the issue, Your Honor, if you'll pardon me a moment, I just wanted to make sure if I can reach for it very quickly. There is a paragraph that says that the defendant shall participate in plasmograph testing throughout the course of defendant supervision as determined and directed by the therapist. And that's what the judge said at the time of sentencing, that to the extent that the therapist was actually satisfied with what had been done so far, that he would not be required to do any further. Ironically, in preparation for this argument, I went back and looked again at the psychosexual evaluation that had been done on behalf of Mr. Kennedy. And in the conditions that are stated therein, and I believe it's at sealed supplemental excerpt record on 74, even his own psychosexual suggested that plasmograph testing might be necessary to determine how far away they are in the treatment. But that was specifically so limited and not required for any other reason. All right. Okay, thank you. Thank you, Your Honor. I think I have a couple of seconds left. I would like to point out that in answer to your question about what should the judge do in these situations and whether or not the restitution statute is workable, I would submit that it is. And McDaniel demonstrates that it is. If the government can offer an expert witness to come in, as they did in McDaniel, and say, as a result of this, Vicki's going to need additional counseling in the amount of the government's problem is solved. The problem in this case is there was no evidence, and in fact the restitution was not based upon the notion that there would be additional losses and costs as a result of treatment, but rather on the number of photos alone, which really doesn't relate to the fact that the defendant may have viewed them once or on the individual occasions. Finally, I think United States v. Paroline makes the point that there's a lot of courts who have tried to deal with this unusual situation and how it fits under the restitution statute and point out that the remedy is for Congress and that perhaps a statutory provision where there were statutory fines or essentially statutory damages would be assessed in every case and committed to a fund that could be apportioned. That clearly was a thought that entered the sentencing judge's mind here, but it simply cannot be done under the statutory framework presently in place. Thank you. Thank you. United States v. Kennedy will be submitted at this time. Thank you, counsel. Counsel, we appreciate your argument. Our next case for argument is.
judges: Fletcher B. , Paez, Ikuta